Good morning, Your Honors. I'm David Isaac. For the record, I'm the Chief Justice of the I'd like to start with the sentencing issue because it presents the more complicated and novel legal issue in this case, whereas the 404B issue involves the application of settled law to facts. So on the sentencing issue— And of course, Rule 103B, which controls here, speaks of the judge ruling definitively—and that's the operative word, D-E-F-I-N-I-T-I-V-E-L-Y—definitively on the record. And frankly, the judge's ruling doesn't seem very definitive to me. Your Honor, I think the judge's definitive was very definitive. I'll deny the motion in limine. I don't think you can be more definitive than that. He then goes on to tell the trial counsel that he can object as the evidence comes in, but he can always do that. The motion was clearly disposed of. It was not a case where the judge says, let's just take that up as the evidence comes in. He says, I am going to deny—or the actual quote is, I'll deny the motion in limine. I thought there was a sort of discussion about you were conceding that the PowerPoint and the training itself would be relevant, and the government was saying, well, we need to back up for the narrative richness and get into the investigation. You're saying that's where I draw the line. So the Court then just said, well, you know, we'll see what the format is when we get there. But that was after actually denying — that was after denying the motion in limine. He denies it. Then they talk about, well, what's going to come in? And the motion was denied as to everything. The judge did not clearly deny the motion as to everything. Then, you know, the trial lawyers, being the good advocates they were, were trying to get the judge to change his mind. And then he says, well, you can object as it comes in. But that doesn't mean that he went back and changed his ruling on the motion in limine. I mean, lawyers are always allowed to— Well, being the good advocates that they were, why wouldn't you object at the time they moved to introduce the evidence? Well, I think at that point, I mean, relying on — you've got 103B. It says if there's a definitive ruling on a motion in limine, it's preserved. I think, you know, I didn't try the case, Your Honor. But I would think that the— I agree with your comment about the great trial lawyers. Not that you're not a great trial lawyer, but that was your subtle way of letting us know you didn't try the record, so you're not at fault, didn't try the case. Your Honor, the truth is I'm not sure why they didn't object. My guess is it was a strategic decision. They knew the evidence was coming in. The Court had ruled on the motion in limine. And at that point, they decided that it was best not to object because the objection was already preserved under 103B. When she takes the stand and then they cross her on this same issue using the word investigation. Yes, Your Honor. So why at that point that — correct me if I'm wrong. I'm not sure I'm right on this. But wouldn't that at that point be admissible for a separate reason, contradiction evidence, unobjected to? At that point, 404B becomes duplicative because it's coming in to impeach her. Well, I'm not sure it was coming in to impeach her. I'm not sure it was contradicting anything she said before. But there was no objection saying this is another way to get 404B in. I mean, there's a page of questioning and on contradiction. She gets asked, you know, while that's happening, while you're sitting in your course listening to professors trying to teach you how to do it right, you're billing Medicare for invoices you know you didn't provide and you have no idea if somebody else provided. And she says, yes, ma'am. But that's not the issue which we're raising here today. That goes to whether the course itself was admissible. We concede that the course itself was admissible, A, because it showed that she was at a course while the record showed that she was at the PHP. At the beginning of that cross, right or wrong, the government lays it by saying there was an investigation. We're going to give you a second chance. Right? I mean, she then denies it was a second chance. But that made the reason that made sense to me was then we get to the jury charge and no one even asked for 404B. And it occurred to me maybe the trial lawyers realized that just came in already once she took the stand.  I can't get into the trial lawyer's head. But am I right that nobody asked for 404B instruction at the end of the case? At the end of the case. There was a – and I think the government actually pointed this out in its brief. There was a 404B instruction in the original charge, proposed charge that the defense submitted. Right. But not at the end of the case. That's correct. In any case, Your Honors, I think that the issue was still preserved based on the very clear denial. I mean, I'll deny the motion in limine in this record. Why wouldn't her investigation be relevant evidence that would be admissible? I think what is relevant here to show lack of accident or mistake or lack of mistake is the course itself. The analogy here is imagine a trial where you have – It gets back to Judge Higginson's question about, you know, the fact that she was investigated. There was a proceeding against her. She was ordered to go out and take this course. And you're saying that that's inadmissible evidence, but yet it seems to be possibly intrinsic evidence. I think it's inadmissible because, first of all, it's not intrinsic. It didn't relate to this. Well, that's your view, counsel. I'm saying perhaps it is intrinsic. That's my view. Your Honor, if I could beg to differ on that. Please do. I don't think it's intrinsic. This investigation had nothing to do with Medicare billing. It didn't involve an intent to defraud for pecuniary gain. It simply had to do with her recordkeeping procedures. Counsel, here's what we know. She was being prosecuted for Medicaid fraud. You agree on that? Yes, Your Honor. You agree that the upshot of her defense was that I didn't intend to defraud Medicaid, but the overpayments which occurred were the result of sloppy recordkeeping. That was the defense. That was her defense. And then the government says, well, in connection with that, we want the jury to know that you actually took a course on how to keep records. Isn't that right? That's right. And we're not quibbling with that. So you're agreeing that that's relevant. Yes, Your Honor. And you knew why they wanted to offer that. Yes, Your Honor. And it could have been handled in a way where it was piecemeal. In other words, the evidence could have come in that she had taken the course without evidence that it was as a result of an investigation. And that's exactly our point in our 404B argument, is that you could have got the evidence in about the course, about her attendance to the course, about her signing in, without getting into the reason she was taking the course, which was really tangential and not related to the issues in this case. What was the recordkeeping that she received this administrative sanction for? The recordkeeping that she received the administrative or that the agreed order ordered her to take this course was she had lost some records and had to reconstruct these records from the hospital's records. And when she did that, she used the dates of the original proceedings without informing, without noting on the record that she was, you know, recreating the record. Once again, nothing to do with Medicare. These records were not submitted to Medicare, and they had nothing to do with Medicare billing. It was simply a recordkeeping issue. In fact, one of the government's arguments that this was not harmful was the fact that the investigation was barely mentioned. But I actually think that makes it worse. You throw out that there's an investigation. You don't tell the jury it was unrelated, it's not for Medicare billing, it didn't have anything to do with the issues that were here today. You just throw it out that there's an investigation. I think that makes it more harmful. It could bear on the fact that why is she taking this course. It could bear on the fact that evidence — didn't some evidence come in that while she was supposedly taking this course, she was also billing for patients in Dallas? That evidence did come in, and I'm not disputing that coming in. No? The only thing I'm — the only thing we're disputing on this is, as Judge Grave points out, the reason for taking the course. And I don't think that the reason for taking the course is relevant. The fact — we can see it. The fact she took the course is relevant. The fact that she was purportedly taking the course while she was purportedly billing for people in Dallas, that's relevant. But the fact that there was an investigation, that is mere propensity evidence. That's — to me, there seems to be no other reason to getting into it other than to say she's a bad character, she has a character for deceit, and we are going to say she's a bad person, which is the whole reason that you don't allow 404B evidence in. Moving back to the sentencing issue, the district court's estimate of intended loss of somewhere between $9.5 and $20 million was erroneous for three reasons. First, it improperly — Do you agree it's a clear or a standard of review? Your Honor, I think the standard of review actually is de novo because we have challenged the district court's method of determining the loss, which is a legal — Was that an objection you made below, though, to methodology? We made an objection — It looked to me like you were saying, hey, you haven't shown — government hasn't shown by preponderance what the intended loss was. And you submitted the affidavit at the sentencing saying this sort of disputes the evidence that could exist, but I never saw an objection saying, Judge, you've got the whole methodology wrong. Well, we made an objection to the amount of loss. I know, but that's a clear error issue, right? Well, that objection was sustained. I don't know that we need to go back and separately object to the methodology since that objection was sustained. And the government hasn't challenged that in its brief. It just seemed pretty obvious to me because it's the point, is to get the district court to understand what you think it's doing wrong. And it seemed to me the thrust at sentencing was district court was pretty much on top of this, saying I sat through the whole trial, and then when she allocutes its sentencing, the defendant allocutes, she specifically goes back to I had no intent. So it seemed inconsistent with that affidavit saying, well, I intended the fraud, but only the discounted amount. The district judge keeps getting presented by a defendant who's saying I had no intent at all. So then he's really got to go back to his entire trial view of this and say, you know, this is right. Well, and I'm not quibbling with the finding that the judge made that the intended loss, the billed amount does not have to be. You just want an exact point, not a $10 million range? Well, I want to make, are you agreeing that she at some point admitted that she intended the fraud or that she intended to receive something? I think the point is, is that she intended to receive benefits from Medicare. I don't think she ever admitted to intending fraud, either at trial or at sentencing or in the affidavit. That's my point. There was an affidavit she gave at sentencing, correct? Correct. There was a declaration. That affidavit said I only intended the discounted amount. That was trying to help you on your loss argument. Right. But then when she actually allocutes, she backs up again and says, you know, I didn't intend anything here. Well, I think she, I mean, she knew that she would be receiving, she and Riverside would be receiving benefits from Medicare. I mean, but I don't think that that necessarily means that she knew that she was committing a fraud. Yes. I guess when the issue is a district judge has got to decide what was in the state of mind of a defendant as to what they intended to defraud, and the defendant herself testified at trial and categorically denied any fraud intent, it's a little hard to then accept her sentencing argument that, well, if I did, I only intended the amount that I knew would be discounted. Well, the judge's finding there that it was some discounted amount was not based on her declaration. True. But then why is that clear error? If he listened to her and he is the only one that could come to a demeanor credibility determination about what she intended when she's denying any intent. It's clear error because of the way in which he determined the loss amount. He shifts the burden back to the defense at that point and says, I don't think she could fine-tune it. By putting the onus on her to fine-tune the loss amount instead of on the government to prove an actual subjective intent, he's misapplying. Wasn't that based on her own assertion that she recognized that whatever she billed, she was actually going to be paid less? But what she says is, I really didn't know how to keep records very well. What the judge said in response to that is, and then I find it very difficult to conclude that you reasoned that the amount that you would gain, that the intended loss was less than what you contended was. You never said you were that specific or detailed in terms of what you were claiming in amounts. Then you come back and say, but I calculated and knew exactly what the loss was going to be to the government, which is to say I knew how much I was going to get paid in overpayments. He said, I don't think that's what happened. You're right. He made a determination less than what the government asked for, but more than what she claimed the intended loss was. What's wrong with that? Your Honor, I see my time has expired. You may. If I may respond to your question, please. What's wrong with it is that once you have burst that bubble, once you've overcome the presumption that the billed amount constitutes intended loss, the burden is on the government to show with specific and reliable evidence the amount of loss. And that simply was not done here. There was no basis for it. Once the district court says the billed amount is not the proper amount of loss, there's no basis for him saying it's some range between $9.5 and $20 million. I mean, there's no reason it's $9.5 based on his reasoning. There's no way to say why it's not $9,499,000 as opposed to $9,500,000. There's simply no evidence that supports that finding. Once you decide the billed amount is insufficient. Let me just point this out for the government's argument. You started out saying it's de novo review. Then just now you said it's not clear error. And the question has been presented to you, why isn't this plain error review since you didn't object apparently to the methodology the court used in district court. And you said, well, the government doesn't point that out in its brief. But, of course, we, not the parties, decide our standard of review. So it doesn't matter whether the government says so or not. So that's a real problem here as to the standard of review, and the government needs to address that. Thank you. Thank you, counsel. May it please the Court, good morning. I'm Amanda Harris on behalf of the United States. There are, of course, two issues in this appeal, and I will begin with the 404B issue. To begin, the standard that this court should apply is plain error review. I direct the court to the record 1139 through 1140 in the record. And the court said, I'll deny the motion in limine, and directly after said, I'll let you make your objections depending upon the nature of the offer made. The court went on to say, well, we'll take up objections as the offer comes. This language was clearly not definitive on the record. It's also very similar to the language from the district court in the Big Eagle case, which is cited in our brief. It's an Eighth Circuit case. And for that reason, this court should review for plain error. The district court's admission of this very brief testimony was not a plain error because it was relevant. I mean, that seems to me actually right, and the commentary supports you. But what do trial attorneys do in opening argument, then, when the district court reserves that 404B saying, well, I'll decide it when I see it? Is the only do both sides therefore have to assume it is or isn't in for opening argument? I think they would assume it was not in. And there was no mention of? I don't believe there was any mention of. There may have been mention of the course itself, but I don't even think there was that. Okay. But not of the investigation. And I'd also point out for the court that the government in closing argument also did not refer to the investigation or the grade order. There was one brief reference to the required medical record-keeping course, but nothing beyond that. And so this testimony was relevant to the key issue at trial, which was the defendant's intent, and also went to the plausibility of her defense. And this court said in Beecham that that meets the 401 relevant standard. Beyond that, under 403, the second step, it also wasn't substantially outweighed by unfair prejudice because this is the same sort of evidence that the defendant put on for her defense, which was that she was a poor record keeper who mistakenly billed Medicare for patients she didn't see and for services she didn't provide. So there wasn't any risk that the jury would hear something that was unfairly prejudicial, which, of course, is the standard. I think, as Your Honor also pointed out, this evidence is harmless in any event. I think it's a good point that this came out in cross-examination. There was no objection. But it's also harmless for a number of other reasons. The evidence against Dr. Iglehart was overwhelming. There were her own admissions that she signed stacks of documents without carefully reviewing them, that she billed patients. The grade order confirmed that she was cooperating and had never been disciplined before and it didn't reflect fraud, right? So it's not really that damning of her. Am I right about those three things? Correct, Your Honor. And the grade order itself, I think, as we pointed out in our brief, was not admitted into evidence. It was merely the mention of the order itself. And so the jury did not hear anything related to specifically what happened during the course of investigation, which also, I think, goes to the harmless error argument. This was an inflammatory evidence, something that was likely to sway the jury for inappropriate reasons. And so for all of those reasons, as well as the fact that I'd also like to point out, there was a jury instruction from the court. It wasn't a 404B instruction because none was requested, but the court at 2616 in the record did instruct a sort of standard jury instruction that the defendant was only on trial for the charges listed in the indictment. And that's the same sort of instruction that this court in Ramos-Rodriguez said was relevant to whether the evidence was properly admitted. I'll turn, unless the court has any further questions about 404B, I'll just briefly say about the loss amount. The standard here is a clearly erroneous standard. Although the defendant attempts to couch this question in terms of what the methodology of the court, the court did state the proper standards here. It acknowledged that the billed amount was prima facie evidence of the intended loss amount. However, following this, the court's president, Ms. Wally, said that that billed amount somewhat overstated the intended loss amount. And so it conservatively estimated the intended loss of $9.5 million. And here the court had a very unique opportunity that isn't often presented, which is that the court had heard the defendant's own testimony. The defendant testified at trial that she didn't know how much Medicare actually paid, that she didn't open the explanation of benefits, which would have explained what had been paid by Medicare and Medicaid. She also didn't know that benefits were sometimes denied, which would lower and explain why the actual loss amount in this case was substantially lower than the billed amount. What was the actual amount? The actual loss amount was approximately $6.3 million, Your Honor. So that was less than 50% of what was billed. I think that was the court's point, which was that there was no way based on the defendant's own testimony that she intended anything less than 50% of the billed amount. And so for those reasons, the court's finding was plausible in light of the record as a whole. The counsel today arguing this is de novo review because of the methodology the court used, was there any objection at trial to the methodology the court was using or anything akin to the argument made today about, well, he used the wrong method? No, Your Honor, there was not. It was simply that the court should have applied the actual loss amount standard, and the court went with a different. Why are you saying it's clear error instead of plain error standard? Well, I'm sorry, Your Honor. Plain error could apply as well. I think the government was giving the defendant the benefit of the doubt, but I think Your Honor correctly points out that plain error review should apply here because there was no objection to the specific methodology. But I would also say that this actually benefited the defendant because the PSR had a— But to say there was no objection to the methodology then is to indicate that there was a methodology. Yes, Your Honor. I think— What was it? What was the court's methodology? Right. I think the court, in sentencing, the court pointed out that the billed amount is prima facie evidence. And that amount was? Was almost $23 million. All right. And then the court said, I have heard the testimony specifically of the defendant, which is why the question is for intended loss. And I believe that based on her testimony, she had a gross idea that Medicare and Medicaid paid somewhat less than what was billed. However, based on her testimony that she didn't know what that amount was, and based on the fact that she didn't know that Medicare and Medicaid denied some claims, there's no way that she would have been able to intend loss less than $9.5 million based on the two benchmarks, which were actual loss and the billed amount. And those are known numbers that the court had. And then the court could sort of determine an amount based on the other evidence presented, which here, again, it was the defendant's own testimony in large part, which is unusual and really helps get into the mind of the defendant, which is what the court is asked to do for intended loss. If the court has no further questions, the government respectfully requests that this court affirm the defendant's conviction and sentence. Counsel, I see you're from the Department of Justice. What's the basis for you being here instead of an assistant U.S. attorney? Your Honor, the fraud section of Maine Justice tried this case, and ordinarily Maine Justice handles the fraud section's appeals. Thank you, counsel. Thank you, Your Honor. Rebuttal. Yes, Your Honor. I want to address Judge Barksdale's questions on standard of review. First of all, when the defendants objected to loss under the PSR, to the loss amount in the PSR, in those objections, they cited your opinion, Judge Graves, in Valdez and the Israeli case, both of which talked about the burden-shifting presumption and the burden-shifting prima facie presumption. So that put the district court on notice that it needed to use that methodology in determining loss. The second thing is, is in there was an objection to the PSR's determination of loss. At that point, you can't object to methodology because you don't know what methodology the judge is going to apply yet. Finally, you're exactly right, Judge Graves, when you say that requiring the defense to object to the methodology assumes that there is a methodology. And in this case, there was no methodology. I thought the district judge explained why he reached a figure between the $22-$23 million bill and the almost $7 million paid by saying, you know, I'm going to go above the threshold 9.5 because you weren't capable or you weren't able to estimate that the amount of loss was going to be less than 9.5. And that's methodology, and that's where counsel should have objected and said, Your Honor, we object to the methodology used. But the judge sustained or, excuse me, overruled the objection to loss. I'm not sure, once the judge has already overruled the objection to the PSR, which objection states this methodology, the very methodology that we're advocating here, and puts the court on notice that it needs to use that methodology. I don't think at that point counsel is required to then again object to. Just like at sentencing, after sentencing, when the judge imposes sentence, counsel, if he thinks the sentence is unreasonable, even though he's been arguing previously why a downward departure should be granted or why a variance should be granted, we still require counsel, if they think the sentence is unreasonable, to stand up and say, Your Honor, we object to the sentence as being substantively unreasonable. We require that. That's to help the district court try to correct any errors it makes, and that's to help cut down on error assertions coming to this court. Your Honor, I think that by telling the district court what methodology it ought to employ, the defense in this case did exactly that. They put the court on notice of the methodology that it ought to employ. What was that methodology? The methodology is the billed amount is prima facie evidence. Once the court makes a determination, though, that the billed amount does not accurately reflect the intended loss, the burden shifts back to the government to prove intended loss beyond a preponderance of the evidence, which in this case it could not do based on the evidence, and the judge does not tie his decision to any specific evidence in the record. There is simply no basis for saying that loss ought to be $9.5 million or greater, as opposed to $9,499,000, and there simply was no evidence in the record from which he could make that determination. But he did state his reason for imposing loss amount above $9.5 million, didn't he? What he said is that he believed that the defendant knew that Medicare did not pay the entire amount, which in fact was consistent with her trial testimony. She said she knew she had a gross amount of how much money she was getting in from Medicare, and that's on page 2222 and 2223 of the record. But then he puts the burden back on the defendant to fine-tune that amount, and that is an improper shifting of the burden here. The burden is on the government. And the court said downward departure. Did it at all say because I've had challenges with the loss amount? No, Your Honor. No. It was based on the defendant's character and her history of charitable works. Thank you, Your Honors. Thank you, counsel. The court will take it.